IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ARLES R. WELLS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-11-19-SPS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Arles R. Wells requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision is hereby AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]"  42 U.S.C. § 423(d)(1)(A).  A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A).  Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

---

[1] Step One requires the claimant to establish that he is not engaged in substantial gainful activity. Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

## Claimant's Background

The claimant was born January 10, 1957, and was fifty-two years old at the time of the administrative hearing. (Tr. 28, 100). He graduated high school, and has worked as carpenter. (Tr. 19, 131). The claimant alleges that he has been unable to work since June 1, 2007, due to heart problems and severe gout. (Tr. 124).

## Procedural History

On August 25, 2008, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied. ALJ Michael A. Kirkpatrick conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated June 21, 2010. (Tr. 11-20). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the residual functional capacity (RFC) to perform the full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). (Tr. 15). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled under Rule 202.14 of the Medical-Vocational Guidelines, *i. e.*, "the Grids." (Tr. 17).

## Review

The claimant contends that the ALJ erred by (i) finding that he had the RFC to perform light work and (ii) failing to perform a proper credibility analysis. In support of his first contention, the claimant argues, *inter alia*, that his non-exertional impairment of pain combined with his advancing age precluded application of the Grids. The Court finds these arguments unpersuasive.

The medical evidence reveals that the claimant had the severe impairments of atrial fibrillation and gout with occasional flare-ups. (Tr. 14). Medical records from the VA indicate that the claimant was treated for flare-ups of his gout on February 1, 2008 and August 31, 2007. (Tr. 186-191). An August 2007 X-ray of the claimant's knee revealed mild degenerative change and knee joint effusion. (Tr. 232). On August 24, 2007, the claimant presented to the VA to establish care and reported his history of atrial fibrillation, stating that his last episode had been six months previous. (Tr. 189). The claimant wore a Holter monitor in 2006, with a follow-up report noting that the Holter monitoring was unremarkable. (Tr. 196). The claimant also was taken to the emergency room for a legal blood draw, and entered treatment for alcohol dependence after he was arrested and charged with his fourth DUI on October 31, 2008. (Tr. 240-241). Treatment notes indicate that the claimant attended regularly and participated appropriately. (Tr. 264-335).

At the administrative hearing, the claimant testified as to his impairments and attributed his inability to work to his atrial fibrillation which occurred three to four times a month, as well as gout in both feet. (Tr. 30). He stated that when he has an episode of

atrial fibrillation he takes a Tylenol and lies down, that the episodes last forty-five minutes to half a day, and that he usually has to rest at least half a day because the episodes exhausted him. (Tr. 31-33). The claimant explained that the episodes usually resolved on their own, but that he had "been to the emergency room several times over the years." (Tr. 32). As to his gout, the claimant stated that it would flare up three to four times a year, that the flare-ups would last one to three weeks and would affect his feet and sometimes his knees. (Tr. 33-34). He testified that when he has gout, he cannot stand or walk because his feet swell and he has to elevate them. (Tr. 34-35). The claimant further testified that when he is not having an atrial fibrillation or gout attack, he can generally sit and stand. (Tr. 36).

     The ALJ summarized the claimant's hearing testimony, as well as all of the medical evidence. He then found that the medical evidence did not support the claimant's allegations of severity and frequency because there was very little evidence of treatment for either of his severe impairments and all of the treatment was conservative, and noted that claimant's own reports as to his atrial fibrillation were that his episodes were occasional and fairly well controlled. (Tr. 16). Additionally, the ALJ noted that the claimant's gout had largely been treated with prescription medication, that the August 2007 gout attack had resolved by September 25, 2007 with the use of prescription medication as well as a prescription for Naproxen. The prescription medication was also used to resolve his February 2008 gout attack. (Tr. 16-17). The ALJ noted that the claimant attended the substance abuse program with no indication of missed sessions due to his gout or atrial fibrillation. (Tr. 17-18). Additionally, the ALJ noted that although it

was not substantial evidence, he gave some consideration to his own observations at the administrative hearing that the claimant gave no outward signs of physical limitation. (Tr. 18). Further, the ALJ found the claimant not credible because his testimony did not match the sparse medical evidence and there was evidence that, contrary to the claimant's own hearing testimony, the claimant had worked since his alleged onset date, as evidenced by the claimant's report during a July 2009 psychological evaluation and his work activity report to the Social Security Administration. (Tr. 18-19).

The claimant first contends that he did not have the RFC to perform light work and the ALJ erred in applying "the grids" to determine he was disabled. In support, the claimant argues that he cannot perform light work because he cannot walk and stand for six hours in an eight-hour workday, and that an RFC of sedentary work would render him disabled under the Grids. The Court does not agree that the ALJ erred in his RFC assessment. Claimant cites a number of medical records in support of his claim that he cannot perform light work, but those records only indicate that the claimant was treated for allergic rhinitis, the two aforementioned gout flare-ups, a sore throat, his heart condition (and the unremarkable Holter monitor results), and an eyeglasses exam. (Tr. 175-176, 185-186, 206, 220, 222, 224-231). The ALJ specifically noted every medical record available in this case with the exception of the claimant's eye exams, *and still concluded* that he could perform light work. *See Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an

exertional work level before [he] can determine RFC within that category.'"), *quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004).

An ALJ may rely conclusively on "the grids" to find that a claimant is not disabled if: (i) the claimant has no significant nonexertional impairment; (ii) the claimant can do the full range of work at some RFC level on a daily basis; and (iii) the claimant can perform most of the jobs in that level. "Each of these findings must be supported by substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993). Thus, use of "the grids" is inappropriate if a claimant has a nonexertional impairment, unless the evidence supports a finding that such impairment is insignificant. *Id.* at 1490-91; 20 C.F.R., pt. 404, subpt. P, app.2, § 200.00(e). The claimant contends that the ALJ did not fully account for his non-exertional impairment of pain. In assessing allegations of pain, an ALJ "must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a 'loose nexus' between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling." *Musgrave v. Sullivan*, 966 F.2d 1371, 1375-76 (10th Cir. 1992), *citing Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987). Because there was objective evidence that the claimant has pain-producing impairment, the ALJ was thus required to consider the claimant's allegations of pain and the extent to which it was disabling. Here, the ALJ reported every instance the claimant sought treatment for his atrial fibrillation and gout, and noted each medication the claimant took during those times, particularly that the claimant was prescribed Naproxen (a pain medication)

following his September 2007 gout flare-up, and that he took aspirin when he experienced atrial fibrillation, but ultimately found that the medical evidence did not support the claimant's reports of frequency and severity of his impairments. (Tr. 15-16). The ALJ therefore *did* link the medical evidence and the claimant's own reports to his physicians to his finding as to the claimant's RFC. *See Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987) (an ALJ may disregard a claimant's subjective complaints of pain if "unsupported by any clinical findings."). *See also Mann v. Astrue*, 284 Fed. Appx. 567, 571 (10th Cir. 2008) ("Insubstantial or infrequent attempts to obtain relief from a painful condition are inconsistent with allegations of disabling pain.") [unpublished opinion], *citing Branum v. Barnhart*, 385 F.3d 1268, 1274 (10th Cir. 2004).

Last, the claimant contends that the ALJ erred in his credibility analysis. A credibility determination is entitled to deference unless the ALJ misreads the medical evidence taken as a whole. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 801 (10th Cir. 1991). An ALJ may disregard a claimant's subjective complaints of pain if unsupported by any clinical findings. *Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987). But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [citation omitted]. An ALJ's credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4 (July 2, 1996). Here, the ALJ noted that "the claimant's statements concerning the intensity, persistence and

limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity." (Tr. 16). Although this boilerplate language is not ideal, *see Bjornson v. Astrue*, 2012 WL 280736 at *4-5 (7th Cir. Jan. 31, 2012) (slip op.) (in addressing nearly identical language, "[T]he passage implies that ability to work is determined first and is then used to determine the claimant's credibility. That gets things backwards. The administrative law judge based his conclusion that Bjornson can do sedentary work on his determination that she was exaggerating the severity of her headaches. Doubts about credibility were thus critical to his assessment of ability to work, yet the boilerplate implies that the determination of credibility is deferred until ability to work is assessed without regard to credibility, even though it often can't be."), the ALJ further developed his credibility analysis at other points in his written opinion. The ALJ mentioned the applicable credibility analysis and cited evidence supporting his reasons for finding that the claimant's subjective complaints were not credible, including (i) the lack of objective medical support during testing, (ii) the conservative nature of the claimant's treatment, (iii) the medical history and treating physician notes, (iv) the claimant's own demeanor at the hearing, (v) the "marked discrepancies between" the claimant's allegations and the information in the record, (vi) the discrepancy as to whether the claimant had worked after his alleged onset date, and (vii) the discrepancy between the claimant's testimony that he sometimes went to the emergency room for his atrial fibrillation and the medical records which only contained one visit to the ER—when the claimant was arrested for his DUI. (Tr. 16-19). The ALJ thus linked his credibility determination to evidence as required by *Kepler*, and provided specific reasons

for his determination in accordance with *Hardman*.  There is no indication here that the ALJ misread the claimant's medical evidence taken as a whole, and his determination of his credibility is therefore entitled to deference.  *See Casias*, 933 F.2d at 801.

## Conclusion

In summary, the Court FINDS that correct legal standards were applied by the ALJ, and the Commissioner's decision is therefore supported by substantial evidence. The Commissioner's decision is accordingly AFFIRMED.

**DATED** this 10th day of September, 2012.

_____
Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma